# EXHIBIT A

Complaint-Verified (This form replaces CCM-...A)     (2/25/05) CCM N008

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2013M001690
CALENDAR/ROOM 0208
TIME 09:00
Other Com Litigation

**Plaintiff(s):**
Antoine Shaw
Cheryl Shaw
William Shaw
The Estate of Lillie Belle Roberts

**Defendant(s):**
Board of Education for Dolton-Riverdale School District 148
Jayne Purcell, District 148 Superintendent

No. _____

Contract _____

Amount Claimed $ 50,000.00 + cc

Return Date 6-3-13

## COMPLAINT

The Plaintiff(s) claim(s) as follows: Now come Antoine Shaw and Cheryl Shaw, on behalf of themselves and their minor child, William Shaw, and on behalf of The Estate of Lillie Belle Roberts, plaintiffs, and bring this Complaint, pursuant to the provisions of the Illinois Compiled Statutes, against the Board of Education for Dolton-Riverdale School District 148 Superintendent. In support of said Complaint plaintiffs state (see attached)

FILED 2013 MAY 16 PM 4:16
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
SIXTH DISTRICT

I, _____ (Name), certify that I am the _____ (Name of Attorney if applicable) plaintiff in the above entitled action. The allegations in this complaint are true.

Atty. No.: _____    Pro Se 99500    Dated: 5/16/2013

Atty. (or Pro Se Plaintiff):
Name: Antoine Shaw, Cheryl Shaw, William Shaw, The Estate of Lillie Belle Roberts
Address: 14209 S. Dearborn
City/State/Zip: Riverdale, IL 60827
Telephone: 708/849-8546

Signature: Antoine Shaw   Cheryl Shaw

☐ Under penalties as provided by law pursuant to 735 ILCS 5/1-109 the abovesigned certifies that the statements set forth herein are true and correct.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL - COURT FILE

2013S001690
CALENDAR/ROOM 0208
TIME 09:00
Other Com Litigation

1. Plaintiffs at all relevant times are residents of Riverdale, Illinois.
2. William Shaw at all relevant times is a grammar school student in Dolton-Riverdale School District 148 at the Park School.
3. William Shaw was adopted by Antoine and Cheryl Shaw in December of 2007 and has been in their care since August of 2004. William was born two months premature and drug exposed (cocaine and methadone). William was slow in his speech development, walking and toilet training. He received speech, physical and developmental therapy.
4. William Shaw attended the Early Childhood Center from 2007 to 2009 in Riverdale, Illinois whereby conflicts first arose between the plaintiffs and the school regarding William's needs.
5. Plaintiffs spoke with the superintendent of School District 148, Dr. Jayne Purcell in 2009 regarding concerns, and left messages for the school board president of School District 148, Ms. Joyce Jackson during this same time. The School Board President did not return plaintiffs' messages and instead chose to leave messages for the plaintiffs with Mrs. Lillie Roberts, the mother of one of the plaintiffs (Cheryl Shaw).
6. William currently attends Park School in Riverdale, Illinois where he was denied the right to attend a field trip and participate in another school function without the plaintiffs being informed by the school. Plaintiffs became aware of his having been excluded after William himself complained to them of having been excluded.
7. Plaintiffs approached William's teacher regarding his having been excluded and without their knowledge. Teacher, Mrs. Lopez, stated that she had no responsibility to inform the plaintiffs of her decision.
8. Plaintiffs informed the teacher and the principal of Park School that they expected to be notified well in advance if William were ever again in danger of being excluded from any other school function.
9. Plaintiffs and legal counsel, Mr. Zedrick Braden, met with the superintendent of School District 148, the principal of Park School, Dr. McFarlane, and legal counsel of School District 148, Ms. Margaret Kostopulos regarding William's participation in field trips. Also discussed were concerns expressed by the school regarding William's behavior. Plaintiffs inquired as to what assistance was available to William regarding his behavioral issues. The School District offered no alternatives or assistance to the plaintiffs. Plaintiffs also requested the desire to review their son's educational file, to which the School District agreed.
10. Plaintiffs and their legal counsel reviewed the educational file in early May of 2011.
11. On May 17, 2011, plaintiffs briefly inquired as to whether William would be allowed to attend an end of the year field trip. The teacher began to disclose to the plaintiffs information not relevant to the matter that she was approached about, and a verbal disagreement developed between the plaintiffs and the teacher. The plaintiffs were at the school to pick up their son at the end of the school day.
12. Police arrived at the school, presumably as a result of the son's teacher calling the police.
13. Plaintiffs documented the May 17, 2011 incident and requested an opportunity to discuss their concerns regarding both the incident and their son's participation in the upcoming field trip.
14. Subsequent visits to the school by the plaintiffs resulted in the plaintiffs speaking with their son's principal.

15. Plaintiffs attended and provided assistance at a school function days after the May 17, 2011 incident. Plaintiffs were told at this time by their son's teacher that he would be allowed to attend the upcoming field trip.
16. No criminal charges were filed against plaintiffs regarding the May 17, 2011 disagreement as the plaintiffs were not in violation of the law.
17. On or about May 23, 2011, the defendant, Dr. Jayne Purcell, in her capacity as School District Superintendent of the Dolton-Riverdale Board of Education, School District 148, wrote a letter to the plaintiffs accusing plaintiffs of violating School District Policy Number 8:30. The letter specifically accused the plaintiffs of "striking, injuring, harassing, or intimidating a staff member, board member, sports official or coach on school district property". The letter purports that copies were distributed to the Park School principal, Dr. Dell McFarlane, and William Henry, The Village of Riverdale Chief of Police. The letter states that "the District is considering" denying plaintiffs "admission to School District 148 property, events, and meetings for a period of one year". The letter further advises the plaintiffs that "a hearing on this matter before the District 148 Board of Education is scheduled".
18. Plaintiffs charge that the superintendent acted with the approval and consent of the Board Members of School District 148.
19. Plaintiffs sent a letter to Dr. Purcell stating that they planned to attend their June hearing. Plaintiffs requested basic information in writing regarding the hearing format and asked the superintendent to confirm the correct date for the hearing as two separate dates were indicated in the complaint that they received.
20. Plaintiffs subsequently received a letter from Margaret Kostopulos, the attorney representing the Board of Education for Dolton-Riverdale District 148. That letter reiterated the false allegations made against plaintiffs in the May 23, 2011 letter, made note of an incident which did not occur and was not included in the District's complaint, and notified plaintiffs that they were banned from school district property, with the exception of school events for their son. This letter further advises plaintiffs that there would be no hearing since the "District is not seeking to ban" plaintiffs "from school events or meetings".
21. This arrangement was unacceptable to the plaintiffs as it prevented them from being able to escort William, whom they knew to have certain behavioral issues, onto school property, into the building and to the classroom safely.
22. Legal counsel of plaintiffs sent a letter to the legal counsel of the School District regarding the contents of his educational file and the matter concerning the ban against the plaintiffs from school property.
23. Margaret Kostopulos, legal counsel of the School District eventually responded by letter to the letter sent by the legal counsel of the plaintiffs, stating that some items that the plaintiffs wanted removed would have to remain a permanent part of William's file and that the legal counsel of the plaintiffs would be informed later as to whether or not the other documents could be removed. Legal counsel for District 148 stated that the District had the authority to continue to ban the plaintiffs from school district property.

24. Plaintiffs notified the Illinois State Board of Education of the violation of their rights and requested assistance. Mr. Patrick Lee of the ISBE agreed to contact School District 148 on their behalf.
25. In early August of 2011, plaintiffs received a letter via regular mail which provided them with forty-eight hours notice of a hearing that the district had scheduled with no input from the plaintiffs. Plaintiffs advised the District in writing that they could not attend the hearing as they had not received sufficient notice and would not have time to make child care arrangements. Plaintiffs then legal counsel was also unavailable on the date that the district had scheduled the hearing for. Neither the plaintiffs or their legal counsel had been advised of the hearing format or their rights for the hearing process.
26. Legal counsel of plaintiffs had not been notified of the hearing date.
27. Letter dated August 5, 2011 from Dr. Purcell regarding the hearing stated that no matters could be discussed during the hearing other than the incident that occurred on May 17, 2011. Dr. Purcell made no mention of when matters directly related to the incident could be discussed with the plaintiffs.
28. The superintendent agreed to wait to hear back from the plaintiffs regarding their availability for a second date and the availability of their legal counsel for the same date, but instead sent a certified letter to the plaintiffs confirming the second hearing date prior to the plaintiffs having had an opportunity to consult with their legal counsel and other parties.
29. Plaintiffs and their legal counsel later notified the superintendent in writing that they were available for the second date, but plaintiffs again requested in writing information regarding the overall format of the hearing and what their rights would be. Plaintiffs also requested that the superintendent inform them in writing of when their concerns outlined in their letter to the ISBE could be addressed as they had been advised that they would not be addressed at the upcoming hearing.
30. Margaret Kostopulos, legal counsel for School District 148, sent a brief response to the legal counsel of the plaintiffs via e-mail the day prior to the hearing. This response failed to address the issues of what the format and rights of the plaintiffs would be during the hearing and made no mention of if the District would address their concerns as outlined in their complaint to the ISBE.
31. Plaintiffs' legal counsel notified the legal counsel of the District on September 6, 2011 that it would be necessary to reschedule the hearing until such time as the legal counsel of the plaintiffs and the plaintiffs had been advised of their rights with regard to the hearing and the overall format of same. This response was sent the same day as the e-mail received from Margaret Kostopulos. Plaintiffs advised District in writing of the same and their desire to have other previously mentioned concerns addressed.
32. Plaintiffs sent a letter dated September 30, 2011, again expressing the need to receive information pertaining to their hearing rights and asking for a response to their concerns outlined to the ISBE.
33. William's maternal grandmother, Mrs. Lillie B. Roberts (now deceased), continued to escort William onto school property and into the building as plaintiffs were still banned off of school district property.

34. Neither the school district or its legal counsel responded to the plaintiffs' letter.
35. Plaintiffs advised the Regional Superintendent of their concerns regarding District 148, and the Regional Superintendent agreed to contact School District 148 on their behalf. Plaintiffs concerns continued to go unaddressed by District 148 and their legal counsel.
36. Plaintiffs sent a letter in October of 2011 to the superintendent of District 148 requesting a meeting to discuss the contents of their son' educational file. Plaintiffs advised superintendent that they were no longer represented by legal counsel and that any response should be sent directly to themselves.
37. Neither the district or their legal counsel responded to the letter sent by the plaintiffs.
38. Plaintiffs sent another letter in October of 2011 to the superintendent of district 148 again advising them that they desired a meeting to discuss the contents of their son's educational file and that they expected this meeting to take place within the time frame required by Illinois State law.
39. Neither the superintendent or their legal counsel responded to the letter sent by the plaintiffs.
40. Plaintiffs retained Mr. Charles Fox, who sent a letter dated November 28, 2011 to the legal counsel of District 148 requesting a meeting to discuss plaintiffs' concerns.
41. School district 148 and their legal counsel greed to meet with the plaintiffs and their legal counsel.
42. Plaintiffs along with their legal counsel met with the superintendent of School District 148 and their legal counsel on December 19, 2011. School District 148 removed documentation pertaining to William Shaw having been adopted by the plaintiffs through the Department of Children and Family Services.
43. Virtually no discussion of other concerns of the plaintiffs could take place at this meeting as the District was focused totally upon the educational file.
44. Plaintiffs and their legal counsel requested a case study for William during the December 19, 2011 meeting, but the superintendent of School District 148 indicated that she saw no such need for a study.
45. Plaintiffs received a five page letter from School District 148 which was referred to by their legal counsel as a "settlement" in January of 2012.
46. Plaintiffs found terms of the "settlement" offered by the District in January 2012 to be unacceptable and therefore declined to sign.
47. Plaintiffs filed for Due Process as negotiations between themselves and School District 148 continued to go poorly.
48. A meeting was held for plaintiff's son on March 1, 2012, and the District agreed to provide a case study for William Shaw.
49. William's maternal grandmother, Mrs. Lillie Roberts, escorted William onto school property for the majority of the 2011-2012 school year due to the ban against the plaintiffs.
50. Unbeknownst to the plaintiffs, Mrs. Lillie Roberts was terminally ill from cancer throughout the time period that she assisted the plaintiffs.
51. On Saturday, February 11, 2011, Mrs. Roberts' health deteriorated further, necessitating that she be hospitalized, at which time the plaintiffs' were made aware of her terminal condition.

52. William's paternal grandmother, Mrs. Mary Thomas began assisting the plaintiffs with escorting William onto school property after the decline of Mrs. Roberts' health.
53. Mrs. Roberts passed away from cancer on March 13, 2012.
54. The ban against the plaintiffs was lifted by School District 148 on March 15, 2012, resulting in a full and complete restoration of the rights of the plaintiffs to school property.
55. A meeting was held in May of 2012 to discuss the results of William's case study. Occupational therapy and other services were recommended to assist William in the areas where his skills were deficient.
56. An IEP was written in June of 2012, which included occupational therapy, mathematics and other services for William. A behavioral plan was also included in his IEP.
57. A second "settlement" agreement was sent to the plaintiffs from School District 148 which plaintiffs also declined to sign.
58. An additional complaint was made by the plaintiffs to the ISBE against certain actions that still have not been addressed by School District 148.
59. Plaintiffs experienced emotional distress by discovering that the maternal grandmother, Mrs. Lillie Roberts, endured hardships and burdens associated with escorting plaintiffs' son onto school property daily during the last months of her life.
60. Plaintiffs suffered embarrassment and humiliation as a result of delays in their being able to address certain needs of their son while the ban was in effect.
61. Plaintiffs were unsuccessful in gaining services for their son until after retaining legal counsel for the second time.
62. Plaintiffs purport that they should have been acknowledged while representing themselves and should not have had to retain legal counsel to receive a response to their concerns.
63. Plaintiffs purport that School District 148 has failed to address the violation of their family's rights.

WHEREFORE, the plaintiffs, Antoine and Cheryl Shaw, pray for damages against the defendents in excess of $50,000, plus attorney's fees and costs associated with bringing this cause of action.

*Antoine Shaw Cheryl Shaw*

Antoine Shaw and Cheryl Shaw, Plaintiffs

(also on behalf of their minor child, William

Shaw and The Estate of Lillie Belle Roberts,

Plaintiffs)

- 2120 - Served  2220 - Not Served  2620 - Sec. of State
- 2121 - Alias Served  2221 - Alias Not Served  2621 - Alias Sec. of State

**Summons** (This form replaces CCM 0646, CCM1 0646, CCM1 0651, CCMD 0648, and CCMD 0649-2 thru 6)   (10/06/09) CCM N649

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### MUNICIPAL DISTRICT

Name All Parties: Antoine Shaw, Cheryl Shaw, William Shaw, The Estate of Lille Belle Roberts
Plaintiff(s)

v.

Board of Education for Dolton-Riverdale School District 148, Jayne Purcell, District 148 Superintendent
Defendant(s)

114 W. 144th Street
Riverdale, IL 60827
Address of Defendant(s)

Case No.: 2013M6001690  CALENDAR/ROOM 0208  TIME 09:00  Other Com Litigation
Amount Claimed: $50,000.00 + CC
Appearance Filing/Return Date: 6/3/13
Status Date: 6/24/13
Trial Date: ___
Time: 9am   Room: 208

Please serve as follows:  ☐ Certified Mail  ☐ Sheriff Service  ☐ Alias  (Plaintiff check one)

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required:

1. To file your written appearance by yourself or your attorney and pay the required fee in:

☐ District 1: Richard J. Daley Center; 50 West Washington, Room 602; Chicago, IL 60602
☐ District 2: 5600 Old Orchard Rd., Rm 136; Skokie, IL 60077   ☐ District 5: 10220 S. 76th Ave., Rm 121; Bridgeview, IL 60455
☐ District 4: 1500 Maybrook Dr., Rm 236; Maywood, IL 60153

on _____, _____; between the hours of 8:30 a.m. and 2:30 p.m.;

☐ District 3: 2121 Euclid, Rm 121; Rolling Meadows, IL 60008   ☒ District 6: 16501 S. Kedzie Pkwy., Rm 119; Markham, IL 60428
on 6-3 ; 13 , before 9:00 a.m.

2. File your answer to the complaint before 9:00 a.m. as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on the reverse side.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than 3 days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 3 days before the day for appearance.

THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

Atty. No.: _____
Name: Antoine Shaw / Cheryl Shaw, William Shaw   The Estate of Lillie Roberts  WITNESS,
Atty. for: _____
Address: 14209 S. Dearborn
City/State/Zip: Riverdale, IL 60827
Telephone: 708/849-8546

DOROTHY BROWN  MAY 16 2013
DOROTHY BROWN, Circuit Court Clerk
Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

SEE REVERSE SIDE

** Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Copy Distribution - White: 1. ORIGINAL - COURT FILE  Green: 2. COPY  Canary: 3. COPY  Pink: 4. COPY  Gold: 5. COPY

(10/06/09) CCM N649

Any person wishing to sue or defend a case as an indigent must petition the court to have the fees, costs, and charges associated with the proceedings waived.

Customers may visit www.cookcountyclerkofcourt.org to access the Clerk's filing fees or telephone the Civil Division at (312) 603-5116 with additional questions.

### NOTICE TO PLAINTIFF

You MUST select a return day of:
not less than 14 or more than 40 days after issuance of summons if amount claimed is $10,000 or less;
not less than 21 or more than 40 days after issuance of summons if amount claimed is in excess of $10,000.

### NOTICE TO DEFENDANT

1. If the complaint is notarized, your answer must be notarized.

**For District 1 Cases Only:**

2. On the specified Return Day, one of the following may occur:

    a. If you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.

    (i) If Plaintiff is not present, the case may be dismissed for want of prosecution.

    (ii) If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an exparte default judgment against you for the amount claimed.

    (iii) If you have filed an appearance and are present on Return Day, trial may be held that day, or may be set for another day certain.

    b. If you are sued for more than $10,000.00, and if you have filed your appearance on time, you must file your answer no later than 10 days after the appearance date (return date) specified on the front of this form. If you have not filed your appearance or answer on time, the Plaintiff may obtain an exparte default judgment against you for the amount claimed. If Plaintiff is not present for the Default call, the case may be dismissed for want of prosecution. If you filed your appearance and have not filed your answer on time the Plaintiff may motion the court to enter a judgment.

3. Late filing of an appearance or answer will not relieve you from a judgment or default order except by court order.

**For District 2, 3, 4, 5 and 6 Cases:**

4. If you are sued for more than $10,000, you have 10 days from the Return Day to answer or otherwise plea.

5. On the specified Return Day, if you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.

6. On the specified Status/Trial Day, one of the following may occur:
    a. If Plaintiff is not present, the case may be dismissed for want of prosecution.
    b. If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an ex parte default judgment against you for the amount claimed.
    c. If you have filed an appearance and are present on Status/Trial Day, trial may be held that day, or may be set for another day certain.

**The following is applicable to District 3 cases only:**

7. This case may/may not be heard on the day for apperance specified in summons.

8. If the claim is for personal injury, or is a civil case in which Plaintiff has filed a jury demand, you will be required to file your appearance in person or by attorney Return Day, and your answer as required by Par. 2(b) above. These cases will be assigned and heard in the Civil Jury Room _____ unless otherwise ordered by the Presiding Judge. Neither Plaintiff nor Plaintiff's attorney will be required to be present on Return Day. The case will be set for Status at 9:00 a.m., approximately 60 days from the date of filing. Plaintiff and Defendant will be required to appear in court on that status day.

9. Trial Rights of Property, Detinues, and Revivals of Judgment, Pro Se, and Forcible Detainer suits are returnable in Room _____ and are disposed of on a Return Day unless otherwise ordered by the Court.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**